UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY SUMMERS,

    Plaintiff,

      v.

U. S. DEPARTMENT OF JUSTICE, et. al.,

    Defendants.

Civil Action No. 98-1837
RWR/DAR

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending for determination by the undersigned United States Magistrate Judge is

Plaintiff's Motion for an Award of Attorney's Fees and Costs pursuant to 5 U.S.C. §

552(a)(4)(B) (Docket No. 118).[1]  Plaintiff argues that he is eligible for attorney's fees because he

"substantially prevailed[,]" and is entitled to an award because he satisfies the four criteria by

which entitlement to an award is assessed.  Plaintiff also argues the amount is reasonable.

Defendant, the United States Department of Justice, in its opposition to the motion,

asserts that the Plaintiff is not eligible for an award because he did not prevail on any issue in this

litigation; the FBI voluntarily released the requested documents; and the Court's orders were only

procedural in nature.  Defendant also asserts that the criteria used to determine entitlement do not

weigh in Plaintiff's favor, and that the amount requested is unreasonable.[2]

---

[1]  <u>See</u> 28 U.S.C. § 636(b)(3); LCvR 72.1(a)(16), 72.2(b).

[2]  Plaintiff named both the Department of Justice and the Central Intelligence Agency (CIA) as defendants.
The CIA was dismissed by the court (Roberts, J.) on May 18, 2000.  Order for Initial Scheduling Conference
(Document No. 35) at 1. Accordingly, the Department of Justice is the sole remaining defendant, and the references
herein to "Defendant" are to the Department of Justice or its component, the Federal Bureau of Investigation (FBI).

Summers v. Dep't of Justice                                                                 2

Upon consideration of the parties' submissions and the entire record herein, the undersigned will deny the motion.

## I.  BACKGROUND[3]

On May 28, 1998, Plaintiff Anthony Summers requested documents from the FBI pertaining to the late Charles Gregory "Bebe" Robozo, a friend of President Richard Nixon, for Summer's biography of Nixon.  On July 23, 1998, Plaintiff commenced the instant action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000).  Defendant moved for an "Open America" stay of proceedings until March, 2000 to allow it to process the records. In February and March, 2000, the FBI released a total of 128 pages.

On March 27, 2000, this Court granted Defendant's motion for a stay of proceedings, and directed Defendant to submit a status report regarding the processing of Plaintiff's request within 14 days of the date of the order.  Defendant filed its status report, that it had released 128 pages to Plaintiff.  On April 19, 2000, the court ordered Plaintiff to file a status report to indicate what impact had on the litigation.  In his status report, Plaintiff stated that he likely would not challenge the redactions in the released pages, but asked that enumerated related materials be either produced or described in a Vaughn index.

Defendant, in accordance with the Court's order, filed an affidavit detailing its efforts and noted the release of additional materials to Plaintiff.  Between July and September, 2000, the Court entered three orders directing the parties to file joint status reports indicating the "additional disclosures defendant has made to plaintiff."  July 17, 2000 Order (Docket No. 39);

---

[3]  See generally April 14, 2004 Memorandum Opinion (Document No. 108) at 1-4.

Summers v. Dep't of Justice                                                                 3

September 1, 2000 Order (Docket No. 41); September 20, 2000 Order (Docket No. 43).  After

disclosing more documents in full or redacted form, Defendant filed a motion for summary

judgment, and Plaintiff filed a cross motion for summary judgment.  On March 10, 2003, the

Court granted Defendant's motion for summary judgment as to some of the withholdings.  The

court stated that if Plaintiff wished to challenge the remaining withheld or redacted records, he

could file a motion within thirty days.  The parties then cross-moved for summary judgment

again as to those records.  On April 14, 2003, this court granted summary judgment in favor of

Defendant.

　　　　On June 14, 2004, Plaintiff, appealed., and Defendant then moved for summary

affirmance.  The Circuit denied the Defendant's  motion and directed that the matter be

calendared for briefing.  The Court of Appeals then referred the matter for mediation.  On

December 16, 2005, the parties agreed to settle the matter.  In exchange for the disclosure of

three names from a document, Plaintiff agreed to withdraw his appeal.  Plaintiff then moved for

an award of attorney's fees and costs.

## II.  CONTENTIONS OF THE PARTIES

Plaintiff's Arguments Regarding Eligibility

　　　　Plaintiff maintains that he is eligible for an award of fees and costs, and entitled to such

an award, because he "substantially prevailed" in this case and meets the criteria for entitlement.

Memorandum of Points and Authorities in Support of Plaintiff's Motion for an Award of

Attorney's Fees and Costs ("Pl's Mem.") at 3, 11.  First, Plaintiff argues that he is eligible to

recover attorney's fees because this Court issued a series of orders requiring that reports be made

by specified dates detailing the progress Defendant had made in providing documents to him.  Id.

at 5.  In addition, he argues that the Court specifically directed Defendant to file an affidavit

detailing its efforts to locate certain records.  Id. at 5-6.  Plaintiff claims that Defendant located

the missing record and provided him with 397 additional pages as a result of these orders.  Id. at

6.  Plaintiff submits that the production of reports and documents after Defendant represented to

the court that it had completed the processing of Plaintiff's request "changed the legal

relationship of the parties" and "could no longer be described as a voluntary change" in the FBI's

conduct.  Id.  Second, he argues that Defendant agreed to settle the case by releasing information

that had been previously withheld.  He contends that Defendant's agreement to release this

information was "caused by the litigation."  Id. 6-7.[4]

Plaintiff's Arguments Regarding Entitlement

Plaintiff also argues that he is entitled to recover attorney's fees because he satisfies all

four criteria by which eligibility is assessed.  The four criteria are (1) the public benefit derived

from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's

interest in the records sought; and (4) whether the government's withholding had a reasonable

basis in law.  See Cotton v. Heyman, 63 F.3d 1115, 1117 (D.C. Cir. 1995).  Plaintiff argues that

the first criterion (benefit to the public) is satisfied because the relationship between Nixon and

---

[4]  In Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598,
605 (2001), the united States Supreme Court held that an attorney's fees claimant, in order to be regarded as a
"prevailing party, must demonstrate that there was a 'judicially-sanctioned change in the legal relationship of the
parties."  Plaintiff observes that the Supreme Court did not decide whether the holding was applicable to FOIA
cases.  Plaintiff acknowledges that this Circuit has since decided that it is, but submit that the case was wrongly
decided.  See Oil, Chemical and Atomic Workers v. DOE ("OCAW"), 288 F.3d 452 (D.C. Cir. 2002); see also Pl's
Mem. at 5, 7-11.

Summers v. Dep't of Justice                                                                    5

Bebe Rebozo, and the FBI's investigatory activities regarding Rebozo, are matters of public

interest.  Pl's Mem. at 12.  Plaintiff  argues that Defendant recognized this interest by not

charging copying costs, which its regulations require absent a public interest in disclosure.  Id.

Plaintiff further argues that the second criterion also supports an award of fees, since he has no

"commercial interest in the documents" within the meaning of FOIA.  Id.  With respect to the

third criterion, Plaintiff argues that favored interests are those which are likely to benefit the

public through the dissemination of the information obtained.  Id.  He asserts that his book dealt

extensively with Rebozo and the FBI's investigation of him.  Id.  With respect to the fourth

criterion, Plaintiff argues that Defendant "failed to meet the court-approved deadline" for

producing the non-exempt records in this case, declaring that processing was complete when

nearly four-fifths of the documents had not been processed.  Id. at 12-13.  Plaintiff submits that

"[t]o settle the case, [Defendant] ultimately released important information which it had

previously insisted could not be released because of privacy considerations."  Id. at 13.

        The Plaintiff also asserts that the amount of attorney's fees sought is reasonable.  Pl's

Mem. at 13-15.  Plaintiff's counsel asserts that in calculating his fees, he reduced by four-fifths

the time he expended with respect to issues as to which he did not succeed.  Id. at 14.


Defendant's Arguments Regarding Eligibility

        Defendant, in its Opposition to Plaintiff's Motion for an Award of Attorney's Fees and

Costs, argues that Plaintiff is not eligible for an award of attorney's fees and costs under FOIA

"because he cannot demonstrate that he has 'substantially prevailed' in this case."  Defendant's

Opposition to Plaintiff's Motion for an Award of [Attorney's] Fees and Costs ("Def's Opp'n") at

Summers v. Dep't of Justice                                                                 6

1.  Defendant argues that the "catalyst" theory on which Plaintiff relies has been expressly

rejected by this Circuit.  Id.

        More specifically, Defendant submits that in this action, "the Court neither ordered the

production of any document, nor set a time frame within which defendant was compelled to

produce responsive documents."  Def's Opp'n at 7.  Defendant claims that "the only action that

occurred in this matter was an agreement by the parties as to the procedural course for the matter

to take[,]" and that '[such] "procedural matters . . . are not a basis for awarding fees."  Id. (citing

Waterman Steamship Corp. v. Maritime Subsidy Bd., 901 F.2d 1119, 1120 (D.C. Cir. 1990);

OCAW, 288 F.2d at 458-59; see also id. at 14.


Defendant's Arguments Regarding Entitlement

        Defendant further argues that even if Plaintiff were deemed eligible for an award of

attorney's fees, the equitable factors which the Court must consider to determine entitlement do

not support an award.  Def's Opp'n at 8-14.  Defendant concedes that the third of the four

factors - - the nature of the complainant's interest in the records sought - - may weigh in

Plaintiff's favor, but submits that the remaining three do not.  Id. at 8-9.  Defendant maintains

that Plaintiff's failure to satisfy even one of the criteria can be grounds for finding that Plaintiff is

not entitled to an award of attorney's fees and costs.  Id.  (citing Chesapeake Bay Found., Inc. v.

Dep't of Agric., 11 F.3d 211, 215-17 (D.C. Cir. 1993)).

        Finally, Defendant argues that even if Plaintiff were eligible for and entitled to attorney's

fees and costs, the "fees sought by plaintiff are disproportionately high in relation to the success

[he] obtained in the case."  Def's Opp'n at 11.  Defendant submits that Defendant, not Plaintiff,

Summers v. Dep't of Justice                                                                 7

was "the ultimate victor"; that Plaintiff "wasted time and resources on claims that lacked merit

and with respect to which he ultimately failed to prevail"; and the number of hours the Plaintiff's

attorney expended on this case was excessive.  Id. at 11-13.


Plaintiff's Reply to Defendant's Opposition

        Plaintiff, in his reply, submits that "[Defendant's] claim that '[P]laintiff has not been

awarded any judicial relief' that 'meaningfully alter[ed] the legal relationship of the

parties' . . . is without foundation."  Reply to Defendant's Opposition to Plaintiff's Motion for an

Award of  Attorney's Fees and Costs ("Pl's Reply") (Document No. 124) at 3.  Plaintiff suggests

that "a series of Court orders required [Defendant] to locate and release" additional documents,

and that the Court "oversaw the location and production" of the additional documents.  Id.

Plaintiff also submits that all four criteria relevant to entitlement have been satisfied, and that his

request is reasonable.  Id. at 4-10.


## III.  STATUTORY FRAMEWORK AND APPLICABLE STANDARDS

I._____Attorney Fees Provision in FOIA

        The Freedom of Information Act embodies a "fundamental commitment to full agency

disclosure of government documents" and "public access, not secrecy, is the main purpose of

FOIA."  Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 244 F.3d 144, 147 (D.C.

Cir. 2001) (citing Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 494 (1994).

Pursuant to 5 U.S.C. § 552(a)(4)(E), the court may assess "reasonable attorney fees and other

litigation costs reasonably incurred in any case . . . in which the complainant has substantially

prevailed."  FOIA allows attorney fees and costs to prevailing parties for two purposes: (1) to

encourage Freedom of Information Act suits that benefit the public interest and (2) to serve as a

"compensation for enduring an agency's unreasonable obduracy in refusing to comply with the

Freedom of Information Act's requirements."  LaSalle Extension Univ. v. Federal Trade Comm'n,

627 F.2d 481, 484 (D.C. Cir. 1980).   To award attorney fees under FOIA, a court must undertake

a two-step inquiry.  First, the court must determine whether the claimant is eligible for attorney's

fees.  Pyramid Lake Paiute Tribe v. U.S. Dep't of Justice, 750 F.2d 117, 119 (D.C. Cir 1984).

Second, the court must determine that the plaintiff is "entitled" to an award of attorney fees and

costs.  Maryland Dep't of Human Res. v. Sullivan, 738 F. Supp. 555, 563 (D.D.C. 1990) (citing

Cuneo v. Rumsfeld, 553 F.2d 1360, 1365 (D.C. Cir. 1977).


A.     Eligibility

In order to be eligible for an award of attorney fees, the plaintiff must have "substantially

prevailed."  5 U.S.C. § 552(a)(4)(E).  In Buckhannon, the Supreme Court considered the fees

provisions of the Fair Housing Amendments Act, 42 U.S.C. § 3601 et seq., and the Americans

with Disabilities Act, 42 U.S.C. § 12101 et seq., which permit courts to award fees only to a

"prevailing party."  Id. §§ 3613(c)(2), 12205.  The Court rejected the plaintiffs' contention, which

the court characterized as the "catalyst theory," under which several circuits, had held that "a

plaintiff is a 'prevailing party' if he achieves the desired result because the lawsuit brought about a

voluntary change in the defendant's conduct."  Buckhannon, 532 U.S. at 601.  Rather, the Court

ruled, for a litigant to be a "prevailing party," there must have been a "judicially sanctioned

change in the legal relationship of the parties."  Id. at 605. "Enforceable judgments on the merits

and court-ordered consent decrees," the court held, suffice to create such a change. Id. at 604.

In OCAW, the District of Columbia Circuit held that the reasoning of Buckhannon applied to FOIA cases. 288 F.3d at 454-57.   It concluded that "the 'substantially prevail'" language in FOIA [is] the functional equivalent of the "prevailing party" language found in the statutes interpreted in Buckhannon.  Id. at 455-56.  It "therefore held that in order for plaintiffs in FOIA actions to become eligible for an award of attorneys' fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree."  Id. at 456-57 (quoting Buckhannon, 532 U.S. at 603).  Plaintiffs are generally considered prevailing parties if they succeed on any significant issue in litigation, which achieves some benefit the parties sought in bringing the suit. Edmonds, 417 F.3d at 1326.   Thus, a defendant's "voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Buckhannon, 532 U.S. at 604.

B.      Entitlement

In deciding whether a claimant is entitled to an award of attorney's fees and costs, a court must analyze four factors: "(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant;  (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." Cuneo, 553 F.2d at 1364.  The second and third factors "are closely related and are often evaluated together." Fenster v. Brown, 617 F.2d 740, 743 (D.C. Cir. 1979).  "None of these factors are dispositive," Piper v. U.S. Dep't of Justice, 339 F. Supp. 2d 13, 20 (D.D.C. 2004) and "[e]ntitlement is at the discretion of the district court." Sullivan, 738 F. Supp. at 563.  Although

Summers v. Dep't of Justice                                                                                    10

these factors must be balanced, failure to satisfy the fourth element may foreclose a claim for

attorney fees.  See, e.g., Chesapeake Bay Found., 11 F.3d 211, 216-17 (D.C. Cir. 1993).  The

entitlement inquiry allows the court to exercise its "sound discretion" to grant or deny fees given

the facts of particular cases.  Church of Scientology v. Harris, 653 F.2d 584, 587 (D.D.C. 1981).

Once a plaintiff is deemed eligible and entitled, the court focuses on the proper amount of the fee

award.


       C.     Reasonableness of Amount of Attorney Fees

A FOIA litigant entitled to an award of attorney's fees and costs only recover the fees and

costs incurred in litigation.  Playboy Enters. v. United States Customs Serv., 959 F. Supp. 11, 18

(D.D.C. 1997).  The reasonableness of a fee request must be evaluated in light of the results

obtained.  Riverside v. Rivera, 477 U.S. 561, 572 (1986).  Such fees and costs should not be

awarded for excessive, redundant, or otherwise unnecessary work.  Hensley v. Eckerhart, 461 U.S.

424, 434-40 (1983).  Nor should fees be granted for hours spent on unsuccessful claims that are

distinct in all respects from successful claims.


## IV.  DISCUSSION

The undersigned finds that Plaintiff is not eligible for an award of attorney's fees and costs

because he did not substantially prevail.  Even were  the court to determine that Plaintiff

substantially prevailed, Plaintiff would not be entitled to attorney's fees because the information

he requested did not benefit the public, was for a commercial benefit at least in part, and the

government's withholdings were reasonable.

Summers v. Dep't of Justice                                                    11

I.        Plaintiff is Not Eligible for Attorney's Fees and Costs

In order to be eligible for attorney fees, the plaintiff must have "substantially prevailed" in

his FOIA action. OCAW, 288 F.3d at 455-56.   Here, Plaintiff claims he substantially prevailed

because (1) Defendant released hundreds of pages as a result of a series of court orders, including

an order directing Defendant to file by a date certain an affidavit detailing its efforts to locate a

particular record; (2) the FBI agreed to settle the case by releasing information it had previously

withheld; and (3) OCAW was wrongly decided.  Pl's Mem. at 5-7.  Each of these arguments is

discussed in turn .

   A.    Plaintiff is Not Eligible Based on the Voluntary Release of Requested Documents After
         Court Orders Requiring Status Reports from Both Parties

The Plaintiff is not eligible for an award of attorney fees because the court orders in this

case did not amount to "judicial relief on the merits[,]" nor did the orders "meaningfully alter the

legal relationship of the parties."  Defendant's "voluntary change in conduct, although perhaps

accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial

imprimatur on the change."  See Buckhannon, 532 U.S. at 604.  The Plaintiff first argues that the

FBI voluntarily released 128 pages, and a series of court orders that were the "functional

equivalent" of the orders in Edmonds required it to release an additional 379 pages of materials.

Pl's Reply at 3.  The Defendant counters that Plaintiff's suit did not result in the release of any

records by the agency other than those released through the normal processing of a FOIA request,

and that Plaintiff's reliance upon Edmonds is misguided.  Def's Opp'n at 6-7.

   1.      The Court Orders Did Not Amount To Judicial Relief On The Merits

In order to determine whether a court order can be considered "judicial relief on the

merits," the court will evaluate whether the plaintiff obtained a court order directing the precise

relief he sought.  See Davy v. CIA, 456 F.3d 162, 165 (D.C. Cir. 2006) (holding that the court

provided the plaintiff with the precise relief he sought, making records promptly available, when

it memorialized a stipulation that required the CIA to release information on certain dates).  In

Edmonds, the plaintiff sued the FBI and sought expedited processing of her FOIA request in

addition to the release of requested documents. Edmonds, 417 F.3d at 1321.  The district court

granted the plaintiff partial summary judgment on the question of expedited review, and ordered

the FBI "to complete the expedited processing . . . and provide plaintiff with all the documents as

to which no exemption is being claimed" by a certain date.  Id.  The court held that the court order

directing the defendant to expedite processing provided plaintiff with full relief "on the merits" of

her claim to expedited treatment.  Id. at 1323.  The court distinguished the order from the order in

OCAW, "which the court described as a 'scheduling order[]' that did not award the plaintiff

'judicial relief on the merits of [its] complaint.'"  Id.  (citations omitted).

        Here, although the Plaintiff argues that the series of court orders were the "functional

equivalent" of those in Edmonds, and tries to distinguish his case from OCAW, none of the orders

in this case either directed Defendant to produce documents by certain dates or otherwise

provided  Plaintiff with any of the precise relief he sought.  Rather, the orders in this case were all

procedural in nature and common in any FOIA litigation.  In OCAW, the district court issued

three orders including an order directing the government to review the documents the plaintiff

sought and "submit a joint report with a proposed schedule" within 60 days.  OCAW, 288 F.3d at

457.  The District of Columbia Circuit held that the order requiring the agency to search the

records did not constitute court-ordered relief on the merits.  Id. at 458-59.   The Circuit  stated

that "[b]efore August 23, the court had not ordered the Energy Department to turn over any

documents; after August 23, the Energy Department still had no obligation to do so."  Id.

Accordingly, Plaintiff in OCAW did not obtain relief on the merits because it sought documents,

and not merely a search for documents.  Id. at 458-59; see also Davy, 456 F.3d at 165 (court

memorialized a joint stipulation outlining dates that the CIA would provide the plaintiff with

documents, making the deadlines judicially enforceable).  Here, as in OCAW, the court orders

directed both parties to file status reports indicating their respective positions in the litigation.

The orders directed the parties to indicate any "additional disclosures defendant has made to

plaintiff," but did not order Defendant to produce any documents.  Rather, the court ruled in favor

of Defendant on two summary judgment motions with regard to its withholdings.  For these

reasons, the undersigned finds that the court orders in this case were in essence "procedural

ruling[s] that cannot serve as the basis for a determination that [the plaintiff] prevailed."  See

OCAW, 288 F.3d at 458.   Accordingly, the plaintiff "did not obtain relief on the merits because it

sought documents, not merely a search therefore."

_____ Plaintiff's argument that the Court's orders were the functional equivalent of those in

Edmonds, because they resulted in the FBI producing hundreds of pages of documents, amounts

to a pre-Buckhannon catalyst theory that "a plaintiff is a 'prevailing party' if he achieves the

desired result because the lawsuit brought about a voluntary change in the defendant's conduct.

However, the District of Columbia Circuit explicitly rejected this reasoning in OCAW, 288 F.3d

at 457; see also Campaign v. FDA, 448 F.Supp.22 146, 150 (D.D.C. 2006) (holding that the

FDA's voluntary release of documents that may have been caused by the court's order to submit a

revised Vaughn index cannot constitute court ordered relief).

Here, while Plaintiff obtained some of the records he sought, there were no orders that required Defendant to produce such records.  When the court did decide contested issues in this case, it ruled in Defendant's favor.  See April 14, 2004 Memorandum Order at 20 ("Defendant withheld documents which were exempt from disclosure under FOIA.").

     2.     The Court Orders Did Not Meaningfully Alter the Parties' Legal Relationship.

For a party to prevail, there must be a "court-ordered change in the legal relationship between the parties." Buckhannon, 532 U.S. at 604 (internal citation omitted).  Stated differently, a party that achieved the desired result because the lawsuit brought about a "voluntary change in the defendant's behavior" is not a prevailing party.  Id. at 605; see also, 288 F.3d at 454-57. Plaintiff argues that the succession of orders requiring that reports be filed detailing the progress Defendant had made in providing records to Plaintiff changed the legal relationship of the parties. Pl's Mem. at 6.  Plaintiff argues that Defendant's disclosures of additional documents in the intervals between the reports, as well as Defendant's acknowledgment that Plaintiff "had agreed to hold off filing a motion to produce such materials pending a further report to the court in 30 days," is evidence of the change in the legal relationship of the parties.  Id.  Defendant, on the other hand, states that the only action that occurred in this case was an agreement by the parties as to the procedural course for the matter to take.  Def's Opp'n at 7.

The undersigned finds that court orders directing the parties to file status reports did not change the legal relationship between the parties because the orders were procedural in nature. An interim order that is procedural, rather than substantive, does not alter the legal relationship between the parties.  Davy, 456 F.3d at 165 (stating that no change in the legal relationship exists where "the order was procedural -- conduct a search -- as opposed to substantive - produce

documents") (citing OCAW, 288 F.3d at 458-59 for the proposition that an order requiring an

agency to search its records does not constitute court-ordered relief on the merits).

      The only order which reasonable could be construed to have changed the relationship

between the parties was the May 25, 2000, order directing Defendant to file an affidavit indicating

its efforts to locate a missing file.  In order to determine whether this order "changed the

relationship between the parties," this Court's recent decision in Campaign v. FDA is instructive.

In Campaign, when the FDA produced an inadequate Vaughn index, this court ordered that the

FDA submit a revised Vaughn index for review.  Campaign, 2006 U.S. Dist. LEXIS 62615, at *2.

The Court's 2002 order was a procedural, rather than substantive, order because it required the

defendant to revise the Vaughn index, and did not require the defendant to produce documents.

As a result, the 2002 order did not "change the legal relationship between the parties."  See

Buckhannon, 532 U.S. at 605.  Similarly, when Plaintiff in this action filed a report indicating that

Defendant had not provided a file, the Court ordered Defendant to file a report regarding its

efforts to locate it prior to deciding the then-pending summary judgment motion.  See OCAW,

288 F.3d at 458-59 (holding that an order requiring the agency to search the records did not

constitute court-ordered change in the relationship of the parties).  Further, after Defendant

submitted its affidavit detailing its efforts, Defendant prevailed on the issue of the validity of

Defendant withholdings.  April 14, 2004 Memorandum Opinion at 20.

      The Plaintiff also argues that the court orders altered the legal relationship of the parties

because the Plaintiff could have sought judicial remedies if Defendant had not complied with the

orders to produce reports.  Pl.'s Reply at 3.  However, the Court did not change the Defendant's

obligation to the Plaintiff, it simply changed the Defendant's obligation to the Court by directing

Defendant to submit reports detailing its position in the litigation.


B.  Plaintiff Did Not Substantially Prevail Based on the Release of Information as Part of a
    Settlement

A plaintiff can "substantially prevail" if he receives a court ordered consent decree.

The Plaintiff argues that on appeal, the FBI agreed to settle the case by releasing all the

information that had been withheld from a crucial document.  Pl's Mem. at 6.  However, in

Buckhannon, the Supreme Court determined that such settlements do not create a "'material

alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees."

Buckhannon, 532 U.S. at 604 and n.7 (quoting Tex. State Teachers Ass'n, 489 U.S. at 792-93).  In

this case, the settlement was a private one, and the court's approval did not transform the

agreement into a form of judicial relief.


C.  Plaintiff's Argument that OCAW Was Wrongly Decided Cannot be Considered by this
    Court

Finally, Plaintiff argues that OCAW was wrongly decided.  Pl's Mot. at 7.  The Circuit, in

Edmonds, noted that the plaintiff in that case also argued that Buckhannon did not apply to FOIA

cases.  The Circuit concluded that the contrary decision in OCAW deprives the panel of the

authority to consider such an argument.  Edmonds, 417 F.3d at 1322 n.3; see also Air Line Pilots

Assc., Int'l v. U.S. Dep't of Transp., 838 F.2d 563, 565 n.3 (D.C. Cir. 1988).  Similarly, in Davis

v. U.S. Dep't of Justice, the court noted that the plaintiff "appears to recognize the futility of his

effort to distinguish OCAW, as his brief devotes considerably more pages to arguing that OCAW

was wrongly decided than to arguing that it can be distinguished.  Davis, 460 F.3d at 92 (D.C. Cir.

2006).  The former is an argument that we cannot entertain because [o]ne three-judge

panel . . . does not have the authority to overrule another three-judge panel of the court." Id.

(citing LaShawn A. v. Barry, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc)).  Likewise, this

court cannot entertain this argument.  OCAW is the law of this Circuit, and this court intends to

apply it.


II.     The Plaintiff Is Not Entitled To Attorney's Fees

        Even if the Plaintiff were found eligible for an award of attorney fees and costs, the

Plaintiff is not entitled to an award because the factors for entitlement do not weigh in Plaintiff's

favor.  In deciding whether a claimant is entitled to an award of attorney's fees and costs, a court

analyzes four factors: "(1) the benefit to the public, if any, derived from the case; (2) the

commercial benefit to the complainant;  (3) the nature of the complainant's interest in the records

sought; and (4) whether the government's withholding of the records had a reasonable basis in

law."  Cuneo, 553 F.2d at 1364.


    A.  Public Benefit

        The public benefit factor is generally satisfied if the plaintiff's victory is likely to add to

the public fund of information that citizens may use in making vital political choices. Cotton v.

Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995).  Plaintiff asserts that information on the

questionable activities of those intimately associated with a former President of the United States

does concern "vital political choices."  Pl's Mem. at 12.  Defendant asserts that the only matter

provided to Plaintiff was the names of three individuals identified in a memorandum upon

Summers v. Dep't of Justice                                                      18

settlement, and that Plaintiff cannot demonstrate how that information contributed to the "public's

ability to make vital political choices."  Def's Opp'n at 9.

　　　In its April 14, 2004, Memorandum Opinion, the court discussed the Defendant's

withholding of names of individuals in the context of FOIA.  The court stated that in assessing

public interest, a court must consider FOIA's basic policy, which "focuses on the citizens' rights

to be informed about what their government is up to."  See Dep't of Justice v. Reporters Comm.

for Freedom of the Press, 489 U.S. 749, 773 (1989).  "Official information that sheds light on an

agency's performance of its statutory duties falls squarely within [FOIA's] statutory purpose.

That purpose, however, is not fostered by disclosure of information about private citizens that is

accumulated in various governmental files but that reveals little or nothing about an agency's own

conduct."  Id.  Here, the FBI had withheld information regarding the identities of three

individuals, and the court found that Defendant had borne its burden of establishing that the

privacy interest affected was sufficient for the purposes of Exemption 6 of FOIA.[5]  April 14, 2004

Memorandum Opinion at 2.  The court further held that the Plaintiff had failed to show how the

public interest would be served by disclosure of the identities of individuals contained within the

documents already disclosed to Plaintiff.  Id. at 12.  Given the court's opinion, the public benefit

of releasing the names of private individuals does not weigh in Plaintiff's favor.


　　B.  Commercial Benefit, Nature of Plaintiff's Interest In The Records

---

[5]  Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b) (6).  If a substantial privacy interest is at stake, the court weighs that "privacy interest in non-disclosure against the public interest in the release of records."  Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989).

Summers v. Dep't of Justice                                                                19

     Although listed as separate factors, the commercial benefit to a plaintiff from FOIA

disclosures and the nature of a plaintiff's interest in disclosure are closely related and often

considered together.  Cotton, 63 F.3d at 1120.  Generally, when a litigant seeks disclosure for a

commercial benefit or out of other personal motives, an award of attorney's fees is inappropriate.

Tax Analysts, 965 F.2d at 1095.  Here, Plaintiff argues that FOIA normally regards commercial

benefit to be too insignificant to weigh against an award in circumstances where the principal

interest in seeking the information is to get it out to the public.  Pl's Reply at 7.   The Plaintiff

cites the legislative history, which indicates, in pertinent part, that "[f]or the purposes of applying

this criterion, news interest should not be considered commercial interests."  S.Rep. No. 93-854,

93d Cong., 2d Sess.19 (1974).

     Plaintiff argues that favored interest are those that are likely to benefit the public through

the dissemination of the information obtained.  Pl's Mem. at 12.  He asserts that his book dealt

extensively with Rebozo and the FBI's investigation of him.  Id.  Defendant counters that the

second factor weighs against an award of attorney's fees because an award of fees is usually

inappropriate "when a litigant seeks disclosure for a commercial benefit or other personal

reasons."  Def's Opp'n at 10.  Defendant asserts that the Plaintiff sought the materials for his

biography of Nixon, which he hoped would be a commercial success.  Id.

     The second and third factors well may favor the Plaintiff regardless of the Plaintiff's desire

that his book be a commercial success.  In Piper, the plaintiff sought documents regarding the

kidnapping of his mother and subsequent government investigation, intending to write a book.

Piper, 339 F. Supp. 2d 13, 22.  The court stated that "the fact that plaintiff will benefit

commercially from potential sales of this book is not sufficient to tip the scale in favor of

Summers v. Dep't of Justice                                                      20

characterizing plaintiff solely as a commercial requester."  Id.

However, the entitlement inquiry allows the court to exercise its "sound discretion" to

grant or deny fees given the facts of particular case.   Church of Scientology, 653 F.2d at 587.

Here, when considering all of the criteria as a whole, the undersigned finds that the circumstances

with respect to the first and last criteria militate against an award.  Plaintiff is not entitled to

attorney fees even if the second and third factors do not necessarily weigh against the plaintiff.


   C.  Reasonableness of the Government's Withholding

The final factor considered in the attorney's fees entitlement analysis is whether the

government agency had a reasonable basis in law for withholding the requested documents.  Piper,

339 F. Supp. 2d at 22.  Under this factor, where the agency's interpretation of its legal right to

withhold information is correct as a matter of law, fees should not be awarded.  Cotton, 63 F.3d at

1117.  Where the agency erroneously interprets the law, its withholdings will be considered

reasonable if the interpretation has a reasonable basis in law.  Id. at 1121. Although these factors

must be balanced, failure to satisfy the fourth element may foreclose a claim for attorney fees.

See, e.g., Chesapeake Bay Found., 11 F.3d at 216-17.

Plaintiff argues that this factor weighs in his favor because the FBI failed to meet the

court-approved deadline for producing the non-exempt records in this case, declaring that

processing was complete when nearly four-fifths of the documents had not been processed.  Pl's

Reply at 9.   To settle the case, it released information that it had previously insisted could not be

released because of privacy concerns, improperly withholding the names of three individuals that

were deceased.  Id.  Defendant argues there was no finding that the FBI's withholdings were

Summers v. Dep't of Justice                                                              21

improper.  Def's Opp'n at 10.  The Court's March 10, 2003 Order and April 14, 2004

Memorandum Opinion upheld the Defendant's withholding of the materials sought.  Id. at 10-11.

It further asserts that the parties' settlement of the matter and stipulation of dismissal were

"merely a formality" and do not constitute a "court-ordered consent decree."  Id. at 11.

Here, the undersigned finds that the Court's rulings in Defendants favor on both summary

judgment motions is dispositive of this issue.


## V.  CONCLUSION

For the foregoing reasons, it is, this 5th day of March, 2007, **ORDERED** that Plaintiff's

Motion for an Award of Attorney's Fees and Costs (Docket No. 118) is **DENIED**.


March 5, 2007                                    _____/s/_____
                                                 DEBORAH A. ROBINSON
                                                 United States Magistrate Judge